# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DWAYNE WHITE,

               Petitioner,

      v.

UNITED STATES OF AMERICA,

               Respondent.

Case No. 14 C 2453

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Petitioner Dwayne White's ("White") Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 1], and Motion for Default Judgment [ECF No. 6] are denied.

## I. BACKGROUND

On September 8, 2009, White was charged in an indictment with four offenses: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One); (2) attempted possession with intent to distribute five kilograms or more of cocaine (Count Two); (3) possession of a firearm in furtherance of a drug offense (Count Three); and (4) possession of a firearm after having been convicted of a felony (Count Seven). (No. 9 CR 687, ECF No. 18.) The facts of this case are summarized in *United States v. Mayfield,* 771 F.3d 417 (7th Cir. 2014), and briefly restated here.

This case arises from a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sting operation in which White and his co-conspirators — Leslie Mayfield, Montreece Kindle, and Nathan Ward — planned and ultimately convened to carry out what they believed to be a stash house robbery. Mayfield, who had been recruited by a confidential informant ("CI"), Jeffrey Potts, was to assemble a crew, gather weapons, and help a disgruntled drug courier carry out the robbery. The drug courier was actually an undercover special agent, Dave Gomez.

According to the evidence presented at trial, on August 9, 2009, Mayfield, Kindle, Ward, and an individual known as "New York" met with Gomez to discuss the robbery. White was not present. Mayfield and the other men discussed the logistics of how the robbery would be carried out and, at the end of the conversation, indicated that the robbery was not too much for them to handle. The robbery was scheduled for the following day.

On August 10, 2009, White appeared in a brown van — along with Mayfield, Kindle, and Ward — at an Aurora, Illinois parking lot where Gomez was waiting in another vehicle. Mayfield got into Gomez's vehicle, and Gomez led the crew to a storage facility. When the men exited their vehicles at the storage facility, Gomez noticed White, who had not attended the previous day's meeting. Both White and Mayfield indicated that White was Mayfield's little brother. White affirmed that he knew about the details of the

robbery, and Mayfield indicated that White was "100 percent" committed to the plan. Nevertheless, Gomez went through the details of the robbery with White. White indicated that he understood, and that the more information Gomez provided, the better. White also asked Gomez how many guns would be in the stash house.

After confirming that all the men were "good" for the robbery, Gomez gave the arrest signal, and White and the other crew members were taken into custody. The van in which White, Kindle, and Ward traveled to the storage facility contained weapons, bullet-proof vests, latex gloves, and a large duffle bag. An agent recovered a black ski mask from White's pocket. White informed the agent that he was lucky that he had not been caught with the "work," meaning the narcotics.

Before trial, the Government presented a motion *in limine* to preclude Defendants from presenting an entrapment defense. Only Mayfield filed a response, accompanied by a six-page, handwritten "statement of fact." (No. 9 CR 687, ECF No. 69.) The Court granted the Government's Motion over Mayfield's objection, (No. 9 CR 687, ECF No. 95), and subsequently denied Mayfield's Motion for Reconsideration.

After a one-week trial, a jury found White guilty on all four counts of the indictment. (No. 9 CR 687, ECF No. 186.) White and his co-defendants appealed their convictions, challenging the

sufficiency of the evidence presented against them. *See, United States v. Kindle,* 698 F.3d 401, 405–08 (2012), *vacated in part on reh'g en banc sub nom., Mayfield,* 771 F.3d 417. Mayfield also appealed the Court's decision to grant the Government's Motion *in limine* precluding his entrapment defense. *Id.* at 408–09. The Seventh Circuit affirmed the convictions. *Id.* at 412.

Mayfield subsequently petitioned for rehearing *en banc* solely on the issue of the entrapment defense. Upon rehearing, the Seventh Circuit vacated its decision on Mayfield's entrapment defense, holding that Mayfield's pre-trial proffer was sufficient to overcome the Government's Motion *in limine. Mayfield,* 771 F.3d at 443. The Seventh Circuit indicated that it was reinstating the panel opinion to the extent that it resolved the appeals of Mayfield's co-defendants. *Id.* at 424 n.3.

## II. <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was imposed in violation of the Constitution or laws of the United States. To receive relief under § 2255, a prisoner must show a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979) (citation and internal quotations omitted). Alternatively, relief may be granted if a prisoner can show the trial court made "an

omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428 (1962). Relief under § 2255 is an "extraordinary remedy" because the petitioner "already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007).

### III.  ANALYSIS

#### A.  Motion for Default Judgment

White filed his § 2255 Motion on April 4, 2014. On December 2, 2014, the Court ordered the Government to file a response by January 19, 2015. A month after that deadline came and went, White moved for default judgment. The Government promptly filed an appearance with the Court and, on May 4, 2015, filed its response.

Although the Court may enter a default judgment against a party that fails to respond after notice in a civil case, *see,* Fed. R. Civ. P. 55, "default judgment, without full inquiry into the facts, is especially rare when entered against a custodian in a habeas corpus proceeding," *Ruiz v. Cady,* 660 F.2d 337, 340 (7th Cir. 1981). As this Court previously noted, courts are reluctant to grant a default judgment on a § 2255 motion because doing so would cause the public to bear "either the risk of releasing prisoners that were duly convicted or the costly and difficult process of retrying them." *Shell v. United States,* No. 03 C 3182, 2004 WL 1899013, at *2 (N.D. Ill. Aug. 16, 2004) (citing *Ruiz,* 660

F.2d at 340), *aff'd,* 448 F.3d 951 (7th Cir. 2006). Such sanctions
are disproportionate to "the wrong of a tardy response." *United
States v. Larsen,* No. 04-CR-29, 2012 WL 2675014, at *1 (E.D. Wis.
July 5, 2012) (citation omitted). Accordingly, a default judgment
should only be entered on a § 2255 motion where the Government's
delay has been extreme. *Id.* (citing *Ruiz,* 660 F.2d at 341). Even
where the delay approaches the tipping point, courts should still
decide the motion on the merits if possible because "if the
petition has no merit[,] the delay in disposing of it will in the
usual case have caused no prejudice to the petitioner." *Bleitner
v. Welborn,* 15 F.3d 652, 653 (7th Cir. 1994).

The Government's delay in this case is not so extreme as to
warrant a default judgment. Moreover, because the Government
filed a response less than four months after the Court-imposed
deadline, the claimed grounds for default have been eliminated,
and the Court may decide the motion on the merits. *See, United
States v. Messino,* No. 97 C 2767, 1998 WL 729557, at *1 (N.D. Ill.
Oct. 15, 1998). White's Motion for Default Judgment is therefore
denied.

## B.  Ineffective Assistance of Counsel Claim

White claims that he is entitled to relief under § 2255
because he received ineffective assistance of counsel. White
argues that his trial counsel was ineffective in failing to (1)
call additional alibi witnesses, (2) adequately communicate with

him, and (3) challenge the sufficiency of the evidence against him.  Related to this third argument, White contends that no evidence of his guilt was presented at trial.  White also argues that his appellate counsel was ineffective in failing to present an entrapment defense.

To prevail on a claim for ineffective assistance of counsel, a petitioner must show that:  "(1) counsel's performance was deficient, meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms', and (2) counsel's deficient performance prejudiced the petitioner, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Smith v. Brown,* 764 F.3d 790, 795 (7th Cir. 2014) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984)).  The Court's review of an attorney's performance is highly deferential, and a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) (citation and internal quotations omitted).

### 1.  Alibi Witnesses

White first argues that his trial counsel was ineffective in failing to call certain alibi witnesses who were not family

members.  White does not indicate who the witnesses are or what testimony they would provide.

"[A] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him."  *United States v. Best,* 426 F.3d 937, 945 (7th Cir. 2005) (quoting *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997)) (internal quotations omitted).  Here, where there was no question that White showed up in Aurora with Mayfield, Ward, and Kindle on the day of the robbery, counsel's decision not to call alibi witnesses was sound trial strategy.  Moreover, White's speculation regarding the testimony of certain unidentified witnesses is insufficient to establish prejudice — that is, the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 687–88; *see also, United States v. Asubonteng,* 895 F.2d 424, 429 (7th Cir. 1990) (explaining that conclusory allegations do not satisfy *Strickland's* prejudice component).  The Court therefore rejects White's claim that his counsel was ineffective in failing to call certain witnesses.

### 2. Attorney Communication

White next argues that had there been adequate communication with his attorney during trial, "counsel would have known there

was no evidence against the petitioner." (White Mem., ECF No. 3, at 5.) Again, the Court finds White's non-specific, conclusory allegations insufficient to establish prejudice under *Strickland.* *See, Asubonteng,* 895 F.2d at 429. As explained in more detail below, and as the Seventh Circuit affirmed, the evidence presented against White was sufficient to support his conviction. The Court therefore rejects White's claim that attorney-client communication was inadequate.

### 3. *Sufficiency of the Evidence*

White argues that trial counsel failed to challenge the sufficiency of the evidence and, relatedly, maintains that there is no proof of guilt against him. White contends that he was not aware of what was taking place on August 10, 2009, in part because Gomez used language designed to cause confusion. The Government responds that White's trial counsel did challenge the sufficiency of the evidence on various grounds. For instance, counsel argued that that White had not joined in the drug trafficking conspiracy because White was not a party to any of the conversations or meetings that took place prior to August 10, 2009. Counsel also emphasized that there was no evidence from any of the recorded conversations admitted into evidence in which White talked about robbing a stash house or selling or distributing cocaine.

The Government also contends that there was ample evidence supporting White's conviction, such as White's agreement to

participate in the robbery after Gomez provided a detailed explanation of the plan and the ski mask found on White's person. In light of this evidence, the Government argues that it would have been objectively unreasonable to argue that there was "no evidence" of White's guilt. Ultimately, the Seventh Circuit found the evidence against White sufficient to support his conviction on all four counts. *See, Kindle,* 698 F.3d at 407. Given the Seventh Circuit's decision, the Court agrees with the Government that declining to argue that there was "no evidence" against White represented sound trial strategy.

Because the record documents trial counsel's efforts to challenge the sufficiency of the evidence against White, the Court cannot accept White's argument that counsel failed to do so. Moreover, to the extent that White seeks to re-litigate the sufficiency of the evidence against him, separate from his ineffective assistance of counsel claim, the Court notes that "[i]ssues that were raised and resolved on direct appeal may not be reconsidered on a § 2255 motion unless the law has changed or new facts have come to light." *United States v. Hamilton,* No. 09 C 654, 2010 WL 1656850, at *2 (N.D. Ill. Apr. 21, 2010). Because the sufficiency of the evidence against White has already been raised and resolved on direct appeal, and White has presented no reason to disturb the Seventh Circuit's ruling, the Court rejects White's insufficient evidence claim.

#### *4. Entrapment Defense*

White next argues that his appellate counsel was ineffective in failing to pursue an entrapment defense. "To raise an entrapment defense, a defendant must show: (1) that he was induced by a government actor to commit the crime at issue; and (2) that he was not predisposed to commit that crime." *United States v. Hall,* 608 F.3d 340, 343 (7th Cir. 2010). The Seventh Circuit recently clarified that "inducement means government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Mayfield,* 771 F.3d at 434–35. In determining predisposition, the Court considers the following five factors:

> (1) the defendant's character or reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced a reluctance to commit the offense that was overcome by government persuasion; and (5) the nature of the inducement or persuasion by the government.

*United States v. Blassingame,* 197 F.3d 271, 281 (7th Cir. 1999). In the predisposition analysis, a defendant's reluctance to commit the crime "looms large." *Mayfield,* 771 F.3d at 437.

Unlike Mayfield's counsel, White's trial counsel made no proffer in response to the Government's Motion *in limine* to preclude Defendants from raising an entrapment defense. Accordingly, appellate counsel did not raise the issue on appeal.

The Court must therefore determine whether trial counsel's failure respond to the Government's Motion *in limine* fell below professional norms and resulted in prejudice. As the Seventh Circuit has emphasized, a defendant's initial burden in defeating a motion *in limine* to exclude evidence of entrapment is not great: "the defendant must produce some evidence from which a reasonable jury could find government inducement and lack of predisposition." *Id.* at 443.

White has not shown that his counsel lacked "sound reason" in choosing not to present an entrapment defense. Indeed, most of the factors the Court uses to assess predisposition appear to weigh against this strategy. First, as to White's character or reputation, the Government notes that White has a prior conviction for possession of a controlled substance which occurred in 2006. Second, the Government did not initially approach White about the scheme — Mayfield did. Third, White participated in the scheme for profit. As Gomez indicated, the 25 to 35 kilograms of cocaine stored in the stash house would be split five ways, and that everybody involved was "going to eat." Fourth, there is no evidence that White displayed any reluctance to commit the robbery. Indeed, White listened as Gomez re-explained the plan, approved of the additional information Gomez provided, and asked how many guns would be in the stash house. Finally, as to the nature of the Government's inducement, there is nothing

extraordinary about an invitation to enter the drug trade on the "usual terms" — that is, to quickly acquire a large quantity of drugs and resell them for a significant profit. *Hall,* 608 F.3d at 344. Taken together, these factors suggest that counsel's decision not to pursue an entrapment defense represented a legitimate trial strategy.

The facts of White's case are distinguishable from Mayfield's. The Seventh Circuit found that Mayfield's proffer contained sufficient evidence of both inducement and predisposition. As to inducement, the court observed that Potts, the CI who initially recruited Mayfield,

> targeted Mayfield at a moment of acute financial need and against a backdrop of prolonged difficulty finding permanent, family-supporting work, . . . appealed to Mayfield's friendship and camaraderie and to their common struggle as convicted felons trying to make a living, . . . gave Mayfield money in order to create a debt that he knew Mayfield would be unable to repay and then exploited that debt by alluding to his status as a member of the Gangster Disciples, . . . [and] pestered Mayfield over a substantial period of time.

*United States v. Mayfield,* 771 F.3d 417, 441 (7th Cir. 2014). As to predisposition, the court noted that Mayfield repeatedly rejected Potts' entreaties, relenting only when Potts implied that the Gangster Disciples might retaliate against him if he failed to repay his debt. *Id.* at 442. White has not indicated what evidence, if any, could support the requisite inducement or lack of predisposition necessary to support an entrapment defense. Without this information, the Court cannot conclude that counsel's

failure respond to the Government's Motion *in limine* fell below professional norms. Nor can the Court conclude that it resulted in prejudice. As the Government notes, counsel's decision not to present an entrapment defense prevented the Government from exploring White's previous criminal conduct. The Court thus rejects this final basis for White's ineffective assistance of counsel claim as well.

## IV.  **CONCLUSION**

For the reasons stated herein, White's Motion for Default Judgment [ECF No. 6] is denied. Having found no grounds upon which to grant White relief under § 2255, the Court also denies his Motion to Vacate, Set Aside, or Correct his Sentence [ECF No. 1].


**IT IS SO ORDERED.**




_____
Harry D. Leinenweber, Judge
United States District Court

Dated: June 18, 2015